Nathan A. Oyster (SBN 225307)
E-mail: noyster@bwslaw.com
Caylin W. Jones (SBN 327829)
E-mail: cjones@bwslaw.com
David E. Manrique (SBN 350842)
E-mail: dmanrique@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2942
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
COUNTY OF RIVERSIDE, CHAD BIANCO, HERMAN LOPEZ, MIKE KOEHLER, MICHAEL MOULTON, and BRUCE PHILLIPS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF RIVERSIDE, CHAD BIANCO, Sheriff, individually and in his official capacity, HERMAN LOPEZ, Corrections Assistant Sheriff, individually and in his official capacity, MIKE KOEHLER, Corrections Operations Chief Deputy, individually and in his official capacity, MICHAEL MOULTON, Correctional Captain for Blythe Jail, individually and in his official capacity, BRUCE PHILLIPS, Correctional Captain for Robert Presley Detention Center, individually and in his official capacity, and JOHN AND JANE DOES 1-10, Staff, individually and in their official capacities,<br><br>Defendants. | Case No. 5:25-cv-03520-DSF-SK<br><br>**DEFENDANTS COUNTY OF RIVERSIDE, CHAD BIANCO, HERMAN LOPEZ, MIKE KOEHLER, MICHAEL MOULTON, AND BRUCE PHILLIPS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>*[Filed concurrently with Opposition to Plaintiffs' Preliminary Injunction; Declaration of Marco Velez and Declaration of Michael Harter]*<br><br>Judge: Hon. Dale S. Fischer<br>Date: February 23, 2026<br>Time: 1:30 pm<br>Crtrm.: 7D, Seventh Floor<br><br>Judge: Dale S. Fischer |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Defendants COUNTY OF RIVERSIDE, CHAD BIANCO, HERMAN LOPEZ, MIKE KOEHLER, MICHAEL MOULTON, and BRUCE PHILLIPS (collectively, "Defendants") submit this Opposition to Plaintiff HUMAN RIGHTS DEFENSE CENTER'S (collectively, "Plaintiff") Motion for Preliminary Injunction ("Motion").

Dated: February 2, 2026

BURKE, WILLIAMS & SORENSEN, LLP

By: *<u>/s/ David E. Manrique</u>*
Nathan A. Oyster
Caylin W. Jones
David E. Manrique
Attorneys for Defendants
COUNTY OF RIVERSIDE, CHAD BIANCO, HERMAN LOPEZ, MIKE KOEHLER, MICHAEL MOULTON, and BRUCE PHILLIPS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. RELEVANT FACTS .......... 3
A. Riverside County's Jail Mail Policies .......... 3
B. Riverside County Does Not Ban or Target Plaintiff's Publications .......... 4
C. Plaintiff's Allegations and the Limited Evidence Supporting Its Motion .......... 4
III. ARGUMENT .......... 5
A. Standard Governing A Motion For Preliminary Injunction .......... 5
B. Plaintiff Has Not Established a Likelihood of Success on the Merits .......... 7
1. Plaintiff Cannot Establish a Likelihood of Success on Its First Amendment Claims .......... 7
2. Plaintiff Cannot Establish a Likelihood of Success on Its Due Process Claims .......... 10
3. Plaintiff Cannot Establish a Likelihood of Success on Its California Bane Act Violations .......... 13
C. Plaintiff Cannot Established Irreparable Harm .......... 14
D. Balance Of Hardships And Public Interest Favor The County .......... 17
IV. CONCLUSION .......... 19

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Am. Freedom Def. Initiative v. King County*,
796 F.3d 1165 (9th Cir. 2015) ... 18

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
750 F.2d 1470 (9th Cir. 1985) ... 6, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 2

*Caribbean Marine Services Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) ... 6, 14

*Elrod v. Burns*,
427 U.S. 347 (1976) ... 16

*Fox Broad. Co. v. Dish Network, LLC*,
747 F.3d 1060 (9th Cir. 2013) ... 14

*Frost v. Symington*,
197 F.3d 348 (9th Cir. 1999) ... 10, 11

*Gant v. County of Los Angeles*,
772 F.3d 608 (9th Cir. 2014) ... 13

*Klein v. City of San Clemente*,
584 F.3d 1196 (9th Cir. 2009) ... 16

*Krug v. Lutz*,
329 F.3d 692 (9th Cir. 2003) ... 10, 11, 12

*League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*,
752 F.3d 755 (9th Cir. 2014) ... 17

*Mauro v. Arpaio*,
188 F.3d 1054 (9th Cir. 1999) (en banc) ... 7, 9

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ... 5

*O'Shea v. Littleton*,
414 U.S. 488 (1974) .......... 12, 14, 18

*Overton v. Bazzetta*,
539 U.S. 126 (2003) .......... 6

*Parratt v. Taylor*,
451 U.S. 527 (1981) .......... 12

*Perfect 10, Inc. v. Google, Inc.*,
653 F.3d 976 (9th Cir. 2011) .......... 14

*Prison Legal News v. County of Cook*,
No. 16-cv-6862, 2016 U.S. Dist. LEXIS 160780 (N.D. Ill. Nov. 21, 2016) .......... 16

*Procunier v. Martinez*,
416 U.S. 396 (1974) .......... 10, 11

*Thomas v. County of Los Angeles*,
978 F.2d 504 (9th Cir. 1992) .......... 18

*Thornburgh v. Abbott*,
490 U.S. 401 (1989) .......... 7, 17, 18

*Turner v. Safley*,
482 U.S. 78 (1987) .......... 7, 17, 18

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 5, 14, 17

**State Cases**

*Allen v. City of Sacramento*,
234 Cal. App. 4th 41 (2015) .......... 13, 14

*Julian v. Mission Cmty. Hosp.*,
11 Cal. App. 5th 360 (2017) .......... 13, 14

*Shoyoye v. County of Los Angeles*,
203 Cal. App. 4th 947 (2012) .......... 13

**Federal Statutes**

42 U.S.C. § 1983 .......... 1

**State Statutes**

California's Bane Act, Civil Code section 52.1 ....................................... 1, 2, 13, 14

**Other Authorities**

California Constitution Article I, section 2 ............................................................ 1

California Constitution Article I, section 7 ............................................................ 1

Corrections Division Policy No. 507.09, subsection 5.1.1............................... *passim*

First Amendment ........................................................................................... *passim*

Fourteenth Amendment ........................................................................ 1, 11, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff Human Rights Defense Center ("HRDC") filed its Complaint on December 23, 2025, alleging that its free speech and due process rights under the United States and California Constitutions were violated by Defendants Riverside County and individual County officials. Plaintiff asserts claims for: (1) violation of 42 U.S.C. § 1983 based on the First Amendment; (2) violation of 42 U.S.C. § 1983 based on the Fourteenth Amendment; (3) violation of Article I, section 2 of the California Constitution; (4) violation of Article I, section 7 of the California Constitution; and (5) violation California's Bane Act, Civil Code section 52.1. The thrust of Plaintiff's claims is that Riverside County's detention facilities—principally the Robert Presley Detention Center ("RPDC") and the Blythe Jail—purportedly maintain policies or practices that censor Plaintiff's publications, including *Prison Legal News* and *Criminal Legal News* and related mailings without adequate notice or an opportunity to be heard. Shortly after filing its Complaint, Plaintiff filed the present motion for preliminary injunction (the "Motion").

Plaintiff's Complaint and Motion, however, suffer from a fatal defect: there is no policy banning or censoring Plaintiff's publications, and there is nothing to enjoin. Riverside County maintains written, facially neutral mail policies applicable Countywide, which expressly permit the receipt of books, magazines, newspapers, and legal mail, including materials published or distributed by Plaintiff, subject only to neutral security-based requirements such as vendor verification, physical mail restrictions (including staples), and contraband screening. (Velez Decl. ¶¶ 9, 10, 11, 17; Vang Decl. ¶¶ 8, 9, 14). Those policies also provide written notice of non-delivery and an opportunity to appeal mail determinations.

Remarkably, although Plaintiff attempts to hold the County and multiple individual defendants responsible for the alleged infringement of its constitutional

rights, the Complaint makes no specific allegations—and the Motion presents no evidence—that any individual defendant personally participated in, directed, or was even aware of the conduct that allegedly forms the basis of Plaintiff's claims. Instead, the individual defendants appear to have been named without factual support. This alone warrants denial of the Motion as to the individual defendants.

The Motion should also be denied as to the County. Plaintiff contends that a limited number of its mailings were rejected or returned over an extended period. (Mot. at pg. 4). Yet despite having access to comprehensive mail records, Plaintiff relies on a small, cherry-picked subset of incidents while ignoring extensive evidence demonstrating the routine delivery of publications and legal mail at both detention facilities. This selective presentation of evidence cannot support the extraordinary relief Plaintiff seeks.

Critically, Plaintiff has failed to establish irreparable harm. The evidentiary record reflects, at most, isolated past denials—not any ongoing or imminent injury. According to the Blythe Jail return-to-sender logs, the most recent return of Plaintiff's publications occurred on November 4, 2024, and RPDC's records reflect that none of Plaintiff's publications have been returned. (Velez Decl. ¶ 18 & Ex. B; Vang Decl. ¶¶ 15). Absent evidence of ongoing harm, Plaintiff's Motion must be denied.

Plaintiff also cannot demonstrate a likelihood of success on the merits. Its Bane Act claim fails as a matter of law because there is no allegation—much less evidence—of threats, intimidation, or coercion accompanying any mail decision. Plaintiff's conclusory allegations are insufficient to support an evidentiary motion for preliminary injunction. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor can Plaintiff prevail on its First Amendment or due process claims, where the undisputed record shows written, content-neutral mail policies, substantial deference owed to correctional officials, and available notice and appeal procedures.

In short, Plaintiff asks this Court to impose mandatory, systemwide injunctive

relief based on conjecture and an incomplete record. Because Plaintiff has not established irreparable harm, a likelihood of success on the merits, or any basis for extraordinary judicial intervention into jail operations, Defendants respectfully request that the Court deny Plaintiff's Motion in its entirety.

## II.

## RELEVANT FACTS

### A. Riverside County's Jail Mail Policies

Riverside County operates multiple detention facilities, including the RPDC and the Blythe Jail, both of which are governed by written Riverside County Sheriff's Department Corrections Division mail policies. Mail sent to individuals housed at County detention facilities is processed pursuant to Countywide standards that regulate the receipt, inspection, and distribution of incoming mail. Mailroom personnel inspect incoming mail for compliance with these policies, while attorney-client privileged mail and court correspondence are handled pursuant to established legal mail procedures. (Velez Decl. ¶¶ 8; Vang Decl. ¶¶ 7).

The County's mail policies permit incarcerated persons to receive books, newspapers, magazines, periodicals, and legal mail, subject to neutral, security-based requirements applicable to all senders. (Velez Decl. ¶¶ 10; Vang Decl. ¶¶ 8). Mail that does not comply with policy requirements may be returned for specified, content-neutral reasons, including improper vendor sourcing, prohibited physical characteristics, contraband concerns, or addressing and formatting deficiencies. (Velez Decl. ¶ 11; Vang Decl. ¶ 9).

Importantly, Corrections Division Policy No. 507.09, subsection 5.1.1 provides for written notice to both the incarcerated person and sender when mail or publications are denied and affords an opportunity to appeal such determinations. (Velez Decl. ¶ 15 & Ex. B; Vang Decl. ¶ 12). When mail or a publication is denied, staff are required to complete a Notification of Denied Mail/Publication form identifying the reason for non-delivery, which is provided to both the incarcerated

person and sender, who may challenge the denial through the established appeal process. *Id*. Separately, when mail is returned, the sender receives notice of the reason for non-delivery through markings on the returned item. (Velez Decl. ¶ 13; Vang Decl. ¶ 10).

Both RPDC and the Blythe Jail apply the same substantive mail standards under Policy No. 507.09. Facility-specific procedures address only logistical aspects of mail handling and distribution and do not alter the content-neutral criteria governing acceptance or rejection of mail. (Velez Decl. ¶¶ 8–12, 26; Vang Decl. ¶¶ 7–9).

**B. Riverside County Does Not Ban or Target Plaintiff's Publications**

Riverside County does not ban *Prison Legal News*, *Criminal Legal News*, or any other publication distributed by Plaintiff. Plaintiff's publications are permitted for delivery to incarcerated persons at the Detention Facilities so long as they comply with the same neutral mail requirements applicable to all publishers and senders. (Velez Decl. ¶ 17; Vang Decl. ¶ 14).

Plaintiff's own allegations confirm that the County does not censor Plaintiff's publications as a matter of policy or practice. According to the Complaint, between April 2024 and December 2025, Plaintiff sent at least 997 items to incarcerated persons at the Detention Facilities of which 964 were not returned, which means they were delivered. (Velez Decl. ¶ 16; Mot. at pg. 4, 15). Only 33 items—approximately 3.3% of the total—were returned, the overwhelming majority from a single facility, the Blythe Jail.

This delivery record is fundamentally inconsistent with Plaintiff's assertion that Defendants maintain a policy or custom of censoring Plaintiff's publications.

**C. Plaintiff's Allegations and the Limited Evidence Supporting Its Motion**

The thrust of Plaintiff's Complaint and Motion is that 33 items sent over a 20-month period were returned to Plaintiff. Of those items, Plaintiff alleges that 30 were returned by the Blythe Jail and only three were returned by RPDC. (Mot. at pg.

4). Plaintiff further alleges that the returned items included issues of *Prison Legal News*, *Criminal Legal News*, and other publications, and that some items were marked with notations such as "No Staples," "Mail Policy Violation," or "No 3rd Party Books." (Mot. at pg. 5).

Even accepting Plaintiff's allegations at face value, they do not establish the existence of an unconstitutional policy, practice, or custom. The return notations Plaintiff identifies correspond directly to facially neutral mail requirements applicable to all senders, including restrictions on physical characteristics such as staples or sourcing requirements for books. (Velez Decl. ¶¶ 9, 11–12; Vang Decl. ¶¶ 9, 19). Plaintiff does not allege that any item was rejected because of its viewpoint or content, nor does it identify any instance in which Defendants categorically banned Plaintiff publications. Additionally, according to Sergeant Feng Vang and the return-to-sender logs, there were no returns of Plaintiff's publications between April 2024 and December 2025. (Vang Decl. ¶¶ 15).

Critically, Plaintiff's own pleading confirms the absence of ongoing or systemic harm. Plaintiff alleges that 964 additional items sent during the same period were not returned. (Mot. at pg. 14). Rather than evidencing censorship, this overwhelming volume of successful deliveries confirms that Plaintiff's publications routinely reach incarcerated persons at the Detention Facilities. At most, the allegations reflect isolated, episodic enforcement decisions within a high-volume jail mail system—not a Countywide policy or practice of censorship.

## III.

## ARGUMENT

### A. Standard Governing A Motion For Preliminary Injunction

A preliminary injunction is an "extraordinary and drastic remedy" that may be granted only where the moving party makes a clear showing of entitlement to such relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). To obtain a preliminary injunction, the moving party must establish: (1) a likelihood of

success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

This burden is particularly demanding in cases challenging prison or jail policies. The party attacking the validity of correctional regulations bears the burden of proving their invalidity, and courts must accord "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). That deference reflects courts' recognition that correctional officials—not judges—are best positioned to make security and operational decisions within detention facilities.

Accordingly, a plaintiff must do more than merely allege entitlement to injunctive relief or submit conclusory declarations. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (rejecting injunctive relief based on declarations that are "conclusory and without sufficient support in facts"). With respect to irreparable harm, a plaintiff must do more than merely allege imminent injury. Rather, the plaintiff must demonstrate an immediate threatened harm through probative evidence; speculative or conclusory assertions are insufficient to warrant injunctive relief. *See Caribbean Marine Services Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Absent such a clear evidentiary showing on each Winter factor, preliminary injunctive relief must be denied.

Here, Plaintiff cannot satisfy this demanding standard. Plaintiff has not demonstrated a likelihood of success on the merits because Riverside County's mail policies are facially neutral, reasonably related to legitimate penological interests, and applied in a manner that overwhelmingly permits delivery of Plaintiff's publications. Nor has Plaintiff shown irreparable harm, as it relies on isolated, past

mail returns rather than probative evidence of ongoing or imminent injury. The balance of equities weighs against injunctive relief because the relief sought would require the Court to mandate changes to jail operations and override correctional officials' professional judgment, while Plaintiff faces no immediate harm under existing policies. Finally, the public interest favors denial of the Motion, as courts must accord substantial deference to jail administrators and avoid unnecessary judicial interference in the administration of detention facilities. Because Plaintiff fails to make the required clear showing on any of the *Winter* factors, its Motion for Preliminary Injunction should be denied.

## B. Plaintiff Has Not Established a Likelihood of Success on the Merits

### 1. Plaintiff Cannot Establish a Likelihood of Success on Its First Amendment Claims

Plaintiff's First Amendment claims are governed by the deferential framework articulated in *Turner v. Safley*, 482 U.S. 78 (1987), and *Thornburgh v. Abbott*, 490 U.S. 401 (1989). Under that standard, regulations governing incoming publications are constitutional so long as they are reasonably related to legitimate penological interests, and courts must accord substantial deference to the professional judgment of correctional officials. *Turner*, 482 U.S. at 89; *Thornburgh*, 490 U.S. at 413–14. Additionally, these neutral mail rules serve obvious security and administrative purposes. Where, as here, the connection between a regulation and institutional security is commonsense, courts apply a highly deferential standard. Under that standard, jail officials need only show that they might reasonably have believed the policy would advance legitimate penological interests. *Mauro v. Arpaio*, 188 F.3d 1054, 1059–60 (9th Cir. 1999) (en banc).

Plaintiff cannot satisfy this standard because it has failed to identify any policy banning its publications, any evidence of ongoing censorship, or any facts undermining the rational relationship between Riverside County's neutral mail policies and legitimate security and administrative objectives.

As a threshold matter, Riverside County does not categorically ban *Prison Legal News*, *Criminal Legal News*, or any other publication distributed by Plaintiff. (Velez Decl. ¶ 17; Vang Decl. ¶ 14). The County's Corrections Division Mail Policy No. 507.09—applicable at both the Robert Presley Detention Center and the Blythe Jail—expressly permits incarcerated persons to receive books, magazines, newspapers, periodicals, and legal mail. (Velez Decl. ¶¶ 10; Vang Decl. ¶¶ 80). The policy is facially neutral and does not permit rejection of publications based on viewpoint or content. (Velez Decl. ¶ 9; Vang Decl. ¶ 19). Instead, it regulates the manner in which materials enter secure detention facilities, including requirements related to physical characteristics and vendor sourcing, which serve legitimate institutional interests in contraband prevention and efficient inspection. (Velez Decl. ¶¶ 11–12, 24–25; Vang Decl. ¶¶ 9, 17–18).

Importantly, the County's mail policy does not authorize rejection of publications solely because they contain staples. (Velez Decl. ¶ 21). Rather, under Corrections Division Policy No. 507.09, section 5.1.1, publications containing staples are to be processed by removing the staples prior to delivery—not by censoring or returning the publication. (Velez Decl. ¶ 22). To the extent any publications were previously returned based solely on the presence of staples, those returns reflected isolated processing issues within a high-volume jail mail system, not County policy. (Velez Decl. ¶23). Those issues were identified through supervisory review and corrected through written guidance to staff clarifying the proper application of the policy. (Harter Decl. ¶¶ 8–9). This undisputed record forecloses Plaintiff's attempt to recast isolated operational mistakes as a Countywide practice of censorship.

According to Plaintiff's own allegations, between April 2024 and December 2025 it sent at least 997 items to incarcerated persons at Riverside County detention facilities, of which only 33 items—approximately 3.3 percent—were returned. (Mot. at pg. 4, 15). That means the overwhelming majority of Plaintiff's publications were

delivered to incarcerated recipients.

The evidentiary record further confirms that Plaintiff is not being censored. Of the limited number of returned items, nearly all occurred at a single, smaller facility—the Blythe Jail—while RPDC, the County's largest detention center, did not return any of Plaintiff's publications during the relevant period. (Vang Decl. ¶ 15). This delivery history is fundamentally inconsistent with Plaintiff's claim that Defendants are censoring its publications or enforcing a policy that suppresses protected speech.

Nor do the limited returns that did occur establish unconstitutional censorship. According to the Blythe Jail return-to-sender logs, forty-one of Plaintiff's publications were returned during the relevant period, all due solely to a staples issue. (Velez Decl. ¶ 18 & Ex. B). Under Corrections Division Policy No. 507.09, publications may not be rejected solely because they contain staples; instead, staples are to be removed and the publication delivered if otherwise compliant. (Velez Decl. ¶¶ 21–22). Any returns based solely on staples reflected isolated processing errors within a high-volume jail mail system—not a policy, practice, or directive to suppress Plaintiff's speech. (Velez Decl. ¶¶ 23).

Plaintiff does not allege, and the record does not reflect, that any item was rejected because of its viewpoint or subject matter, that Plaintiff's publications were categorically excluded, or that approved materials were withheld for extended periods. At most, Plaintiff alleges episodic enforcement errors, which courts have consistently held do not establish a First Amendment violation or warrant injunctive relief. *See American Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985); *Mauro v. Arpaio*, 188 F.3d 1054, 1059–60 (9th Cir. 1999) (en banc).

The facility-specific nature of Plaintiff's allegations further underscores the absence of any unconstitutional policy or custom. Both RPDC and the Blythe Jail operate under the same Riverside County Sheriff's Department Corrections Division

mail policies, yet the alleged returns occurred almost exclusively at one facility. This uneven distribution of returns is incompatible with the existence of a Countywide policy suppressing Plaintiff's speech and instead confirms that Riverside County's facially neutral mail policies are applied in a manner that permits delivery of Plaintiff's publications across facilities. (Velez Decl. ¶¶ 20, 26; Vang Decl. ¶¶ 16, 20).

In short, Riverside County's mail policies are content-neutral, reasonably related to legitimate penological interests, and applied in a manner that overwhelmingly permits delivery of Plaintiff's publications. Plaintiff's as-applied First Amendment claim therefore fails as a matter of law.

**2. Plaintiff Cannot Establish a Likelihood of Success on Its Due Process Claims**

Plaintiff's due process argument rests on the erroneous premise that the Constitution requires individualized, formal notice and a separate appellate process for every instance in which mail is returned, and that anything short of such procedures is constitutionally deficient. That is not the law. In the prison mail context, due process requires only minimal procedural safeguards—notice sufficient to inform the sender of the reason for non-delivery and a reasonable opportunity to challenge the decision—tailored to the practical realities of jail and prison administration. *Procunier v. Martinez*, 416 U.S. 396, 418–19 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Krug v. Lutz*, 329 F.3d 692, 697–98 (9th Cir. 2003); *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999).

Plaintiff cannot demonstrate a procedural due process violation because Riverside County's mail policies provide constitutionally adequate notice and an opportunity to be heard. (Velez Decl. ¶ 15; Vang Decl. ¶ 12). Under Corrections Division Policy No. 507.09, subsection 5.1.1, when mail or a publication is denied, staff are required to complete a Notification of Denied Mail/Publication form

identifying the reason for non-delivery, which is provided to both the incarcerated person and the sender. (Velez Decl. ¶ 15 & Ex. A; Vang Decl. ¶ 12). The notice expressly advises the incarcerated person and sender that the mail determination may be appealed to designated Corrections Division supervisory personnel within specified timeframes, thereby affording a meaningful opportunity to challenge the decision. (Velez Decl. ¶ 15 & Ex. A; Vang Decl. ¶ 12).

Senders likewise receive notice when mail is rejected. When mail is returned, the sender receives the returned item marked with a notation identifying the reason for non-delivery, such as a policy or addressing issue. (Velez Decl. ¶ 13; Vang Decl. ¶ 10). If a sender has questions regarding a returned mailing, the sender may contact the detention facility to seek clarification regarding the reason for non-delivery or to raise a concern regarding the application of the mail policy. (Velez Decl. ¶ 14; Vang Decl. ¶ 11).

These procedures apply uniformly to all senders and publications and satisfy the minimal procedural safeguards required by the Fourteenth Amendment. Returned items identified by Plaintiff bore standardized notations—such as "No Staples," "Mail Policy Violation," or "No 3rd Party Books"—which correspond to neutral, written mail rules applicable to all senders and were sufficient to inform Plaintiff why the items did not comply with policy. Due process does not require a detailed narrative explanation on the face of every returned item. Rather, it requires notice sufficient to inform the sender of the basis for non-delivery and a meaningful opportunity to seek review. *See Frost v. Symington*, 197 F.3d 348, 353 (1999); *Krug v. Lutz*, 329 F.3d 692, 697 (2003).

Plaintiff's assertion that returned mail cannot constitute "notice" misstates the law. Courts have made clear that due process requires only reasonable notice under the circumstances, not elaborate or formalized procedures. *See Procunier v. Martinez*, 416 U.S. 396, 418–19 (1974); *Krug v. Lutz*, 329 F.3d 692, 697 (2003). Nothing in the Constitution requires that returned mail include legal citations,

formal appeal instructions on the envelope itself, or separate outreach initiated by jail officials. Plaintiff cites no authority imposing such requirements, and its disagreement with the manner in which notice was provided does not amount to a constitutional violation.

Additionally, Plaintiff has not shown that it lacked a meaningful opportunity to challenge any mail determination. Plaintiff does not allege that it attempted to invoke the appeal process provided by policy and was denied review, ignored, or rebuffed. Instead, it speculates that any appeal would have been "futile" because items were returned via the USPS. (Mot. at pg. 20). Speculation that available procedures would be futile is insufficient to establish a constitutional violation. *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (rejecting claims premised on speculative future injury). Where an opportunity to challenge a mail decision exists and there are no facts showing that review was unavailable or denied, a plaintiff cannot establish a deprivation of a meaningful opportunity to be heard. *See Krug v. Lutz*, 329 F.3d 692, 697–98.

Finally, Plaintiff's reliance on the submission and denial of a government tort claim does not advance its due process theory. The tort claims process is distinct from, and not a substitute for, the procedures governing inmate mail decisions, and Plaintiff identifies no authority holding otherwise. Due process analysis focuses on the procedures governing the challenged deprivation itself. Post-deprivation remedies are constitutionally relevant only where pre-deprivation process is impracticable, not where established procedures already provide notice and an opportunity to be heard. *See Parratt v. Taylor*, 451 U.S. 527, 540–44 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986).

In short, Riverside County's mail policies provide constitutionally adequate notice and an opportunity to appeal, and Plaintiff has not shown that it was denied either. Because Plaintiff's due process claim is premised on an overstatement of constitutional requirements and unsupported assertions of futility, it cannot establish

a likelihood of success on its Fourteenth Amendment claim, and preliminary injunctive relief is unwarranted.

**3. Plaintiff Cannot Establish a Likelihood of Success on Its California Bane Act Violations**

Plaintiff's claim under California's Bane Act, Civil Code section 52.1, fails as a matter of law. The Bane Act was intended to address only egregious interferences with constitutional rights, not routine administrative actions or ordinary disputes over policy enforcement. *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 395 (2017). Accordingly, a plaintiff must show not only an underlying constitutional violation, but also that the violation was accomplished by threats, intimidation, or coercion that are independent of the alleged constitutional deprivation itself. *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959–60 (2012); *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

Plaintiff cannot meet this demanding standard. Its allegations concern the return of a limited number of mail items pursuant to facially neutral jail mail policies. It does not allege—much less present evidence of—any threats, intimidation, or coercion directed at Plaintiff or anyone else. There are no allegations of force, menacing conduct, threats of punishment, or actions designed to compel or deter conduct through intimidation. The mere return of mail pursuant to neutral mail policies, without threats, intimidation, or affirmative coercive conduct, does not satisfy the coercion element of the Bane Act. The statute requires coercion independent of the alleged constitutional violation itself, and routine or non-egregious administrative enforcement does not suffice. *See Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959–60 (2012) (rejecting Bane Act liability for routine administrative actions); *Gant v. County of Los Angeles*, 772 F.3d 608, 623–24 (9th Cir. 2014) (requiring coercion distinct from the underlying constitutional claim).

Plaintiff attempts to circumvent this requirement by asserting, in conclusory

fashion, that Defendants acted with "reckless disregard" or "ill motive." Such labels are insufficient. Absent factual allegations of threats, intimidation, or coercion beyond the underlying conduct itself, a plaintiff cannot state a Bane Act claim. *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67–68 (2015).Where, as here, the challenged conduct consists of neutral policy enforcement without any coercive element, a Bane Act claim fails as a matter of law.

Plaintiff's Bane Act claim independently fails because it has not established any underlying constitutional violation. As discussed above, Riverside County's mail policies are facially content-neutral, are reasonably related to legitimate penological interests, and are applied in a manner that permits delivery of Plaintiff's publications rather than categorically rejecting them. Absent a viable First Amendment or due process violation, there can be no liability under Civil Code section 52.1. *Julian, 11 Cal. App. 5th at 395.*

Because Plaintiff has not shown—and cannot show—either an underlying constitutional violation or the independent element of threats, intimidation, or coercion required by the Bane Act, it cannot establish a likelihood of success on this claim. Preliminary injunctive relief is therefore unwarranted on this ground as well.

**C. Plaintiff Cannot Established Irreparable Harm**

To obtain preliminary injunctive relief, Plaintiff must demonstrate a likelihood of immediate, ongoing, or imminent irreparable injury. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). It has not done so. "Past exposure to illegal conduct does not, in itself, show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Rather, Plaintiff "must demonstrate immediate threatened injury," *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988), and a "sufficient causal connection" between the alleged injury and the conduct to be enjoined such that an injunction would actually prevent future harm. *See Perfect 10, Inc. v. Google, Inc.*, 653 F.3d

976, 982 (9th Cir. 2011); *see also Fox Broad. Co. v. Dish Network, LLC*, 747 F.3d 1060, 1072–73 (9th Cir. 2013) (irreparable injury must "flow from" the violation sought to be enjoined).

Plaintiff has not presented probative evidence of any ongoing or imminent harm. Its allegations concern, at most, a limited number of past mail returns over an extended period—not continuing or imminent censorship. Plaintiff alleges that between April 2024 and December 2025 it sent 997 items to incarcerated persons at Riverside County detention facilities, of which only 33 items—approximately 3.3 percent—were returned. (Mot. at pg. 4, 15). Plaintiff further alleges that 30 of those returns occurred at the Blythe Jail, while only three occurred at the Robert Presley Detention Center.

The evidentiary record confirms the absence of any ongoing or imminent harm. According to the Blythe Jail return-to-sender logs, forty-one of Plaintiff's publications were returned between April 2024 and December 2025, all due solely to the presence of staples. (Velez Decl. ¶ 18 & Ex. B). Those returns do not reflect censorship or an ongoing policy violation. Under Corrections Division Policy No. 507.09, subsection 5.1.1, publications may not be rejected based solely on staples and must instead be processed by removing the staples prior to delivery. (Velez Decl. ¶¶ 21–22).

After a grievance brought the issue to supervisory attention, the Blythe Jail's Lieutenant Harter reviewed the applicable policy and issued written guidance to supervisory staff reiterating that publications containing staples were not to be returned on that basis alone and were to be delivered after staple removal. (Harter Decl. ¶¶ 8–11). Consistent with that corrective action, the Blythe Jail return-to-sender logs reflect that the most recent return of occurred on November 4, 2024, and no further returns have occurred since. (Velez Decl. ¶ 19). This undisputed record forecloses any claim of ongoing or imminent injury. At RPDC, none of Plaintiff's publications were returned at all during the relevant period. (Vang Decl. ¶ 15).

This undisputed record forecloses any claim of imminent or continuing injury. Both facilities operate under the same Countywide mail policy, which permits delivery of Plaintiff's publications and does not categorically ban Plaintiff's materials. To the extent any of Plaintiff's publications were returned at Blythe, those returns reflected isolated processing issues within a high-volume jail mail system—not an ongoing policy or practice of censorship. (Velez Decl. ¶ 23).

Plaintiff's delay further defeats any claim of irreparable harm. Plaintiff alleges that the first mail returns occurred in April 2024, yet it did not seek preliminary injunctive relief until January 2026—nearly two years later. Such delay is fundamentally inconsistent with a claim of urgent or irreparable injury. Furthermore, such a delay is "highly relevant to the claim of irreparable harm" and weighs strongly against injunctive relief. *Prison Legal News v. County of Cook*, No. 16-cv-6862, 2016 U.S. Dist. LEXIS 160780, at *34 (N.D. Ill. Nov. 21, 2016) (finding irreparable harm claim "severely undermined" where PLN waited over a year after alleged censorship to seek an injunction). If Plaintiff truly faced imminent and ongoing suppression of its speech, it would not have waited nearly two years to seek emergency relief.

Plaintiff attempts to sidestep this failure of proof by invoking the general proposition that "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). But that presumption applies only where First Amendment rights "were either threatened or in fact being impaired at the time relief was sought." *Id.* (emphasis added). None of the cases Plaintiff relies upon applies *Elrod* in the absence of ongoing harm. Rather, each involved injunctions against actively enforced laws or policies that continued to restrict speech at the time of the motion. *See,* e.g., *Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) (ongoing ordinance restricting political speech).

Here, by contrast, Plaintiff has not shown that its publications are currently

being censored pursuant to a Countywide policy or practice. The undisputed record shows continued delivery of Plaintiff materials and, at most, a handful of past returns based on neutral mail-policy criteria or possible clerical error. In the absence of evidence of present or imminent censorship, *Elrod* and its progeny do not apply, and Plaintiff's speculative allegations of future harm are insufficient to justify the extraordinary remedy of preliminary injunctive relief. Because Plaintiff has failed to demonstrate irreparable harm, its Motion must be denied.

**D. <u>Balance Of Hardships And Public Interest Favor The County</u>**

The balance of hardships and the public interest favor the County. To obtain a preliminary injunction, a plaintiff must demonstrate that the requested relief is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The public-interest requirement is a distinct and mandatory component of the four-factor preliminary injunction test and must be satisfied in addition to the other factors. *Id*. at 20–24. In evaluating this factor, courts must consider the effect of the requested injunction on non-parties and on broader institutional and governmental interests, particularly where the relief sought would interfere with governmental operations. *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 764–66 (9th Cir. 2014).

Where injunctive relief would intrude into jail administration, the public interest analysis is informed by the substantial deference owed to correctional officials. Courts are "ill equipped to deal with the increasingly urgent problems of prison administration" and must accord significant deference to the professional judgment of jail administrators in matters affecting institutional order, security, and operations. *Turner v. Safley*, 482 U.S. 78, 84–85 (1987). That deference reflects the public's strong interest in allowing correctional institutions to manage internal policies affecting order, security, and operations without unnecessary judicial interference. *Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989).

The public interest also weighs against preliminary injunctions that would

alter, rather than preserve, the status quo. Mandatory preliminary injunctions are disfavored and should not issue absent a clear showing that extreme or very serious harm will result without immediate relief. *Am. Freedom Def. Initiative v. King County*, 796 F.3d 1165, 1173 (9th Cir. 2015). Absent evidence of ongoing or imminent constitutional violations, injunctive relief is inappropriate where it would require a federal court to engage in continuing oversight of routine governmental operations. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Here, Plaintiff cannot meet its burden of showing that the requested injunction would serve the public interest. The relief Plaintiff seeks would require this Court to intrude into the administration of Riverside County's detention facilities by dictating how jail officials process and deliver inmate mail. Courts have long recognized that the public has a strong interest in deferring to the professional judgment of correctional officials in matters affecting institutional security, order, and operations. *Turner*, 482 U.S. at 84–85; *Thornburgh*, 490 U.S. at 407–08.

The injunction Plaintiff seeks would also alter, rather than preserve, the status quo by requiring Defendants to implement new mail-handling and notice procedures. Such mandatory preliminary injunctions are disfavored and should not issue absent extraordinary circumstances. *Am. Freedom Def. Initiative*, 796 F.3d at 1173. The public interest weighs against imposing injunctive relief that would require ongoing judicial oversight of routine correctional operations. *O'Shea*, 414 U.S. at 495–96.

Finally, the public interest is not served by an injunction based on limited or isolated instances of alleged mail rejection rather than evidence of an ongoing, systemic constitutional violation. Absent such a showing, federal courts should refrain from restructuring correctional policies or substituting judicial judgment for that of jail administrators. *Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1992).

///

**IV.**

**CONCLUSION**

Plaintiff has not made the clear showing required for preliminary injunctive relief, and its Motion should be denied.

Dated: February 2, 2026

BURKE, WILLIAMS & SORENSEN, LLP

By: *_/s/ David E. Manrique_*
Nathan A. Oyster
Caylin W. Jones
David E. Manrique
Attorneys for Defendants
COUNTY OF RIVERSIDE, CHAD BIANCO, HERMAN LOPEZ, MIKE KOEHLER, MICHAEL MOULTON, and BRUCE PHILLIPS

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants COUNTY OF RIVERSIDE, CHAD BIANCO, HERMAN LOPEZ, MIKE KOEHLER, MICHAEL MOULTON, and BRUCE PHILLIPS, certifies that this brief contains 5617 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 2, 2026 BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ David E. Manrique*
Nathan A. Oyster
Caylin W. Jones
David E. Manrique
Attorneys for Defendants
COUNTY OF RIVERSIDE, CHAD BIANCO, HERMAN LOPEZ, MIKE KOEHLER, MICHAEL MOULTON, and BRUCE PHILLIPS