**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER,<br>Plaintiff,<br><br>v.<br><br>COUNTY OF RIVERSIDE; CHAD BIANCO, Sheriff, individually and in his official capacity; HERMAN LOPEZ, Corrections Assistant Sheriff, individually and in his official capacity; MIKE KOEHLER, Corrections Operations Chief Deputy, individually and in his official capacity; MICHAEL MOULTON, Correctional Captain for Blythe Jail, individually and in his official capacity; BRUCE PHILLIPS, Correctional Captain for Robert Presley Detention Center, individually and in his official capacity; and JOHN AND JANE DOES 1-10, Staff, individually and in their official capacities,<br>Defendants. | 5:25-cv-03520-DSF-SK<br><br>Order GRANTING in Part and DENYING in Part Motion for Preliminary Injunction (Dkt. 11) |

Plaintiff Human Rights Defense Center (HRDC) moves for a preliminary injunction barring Defendants from refusing to deliver

HRDC's publications and correspondence to incarcerated persons in Defendants' custody. Dkt. 11 (Mot.). Defendants oppose. Dkt. 26 (Opp'n). A hearing on the motion was held on March 2, 2026. Dkt. 35 (Hr'g Tr.). For the reasons stated below, HRDC's motion is GRANTED in part and DENIED in part.

## I. Background[1]

HRDC is a not-for-profit organization focused on "public education, advocacy, and outreach to incarcerated persons and the public about the economic and social costs of prisons to society." Dkt. 1 (Compl.) ¶ 12. As part of its work, HRDC "publishes and distributes two monthly magazines covering corrections and criminal legal news and analysis," as well as "books about the criminal legal system and legal issues affecting incarcerated persons, which HRDC distributes by mail to incarcerated persons, lawyers, courts, libraries, and the public throughout the United States." Id.

Among other publications, HRDC publishes and distributes: (1) *Prison Legal News*, which "contains news and analysis about correctional facilities, the rights of incarcerated persons, court opinions, prison and jail conditions, excessive force, and religious freedom"; (2) *Criminal Legal News*, which "contains news and analysis about individual rights, court rulings, and other criminal legal-related issues"; (3) *Prisoners' Guerilla Handbook*, a soft-cover book that "provides information on enrolling at accredited higher educational, vocational and training schools"; and (4) *The Habeas Citebook*, a soft-cover book describing "the procedural and substantive complexities of federal habeas corpus litigation with the goal of identifying and litigating claims involving ineffective assistance of counsel." Id. ¶¶ 25-27.

[1] Although the Court cites HRDC's complaint for background facts, the Court relies on facts substantiated by the declarations and exhibits both parties have submitted for its decision. The Court notes where there is a factual disagreement between the parties.

Though not the publisher, HRDC is the "sole national distributor of *Protecting Your Health and Safety*" (*PYHS*), which "describes the rights, protections and legal remedies available to persons concerning their health and safety while they are incarcerated." Id. ¶ 27. HRDC also distributes *The Best 500+ Non-Profit Organizations for Prisoners & Their Families* (*Non-Profits for Prisoners*), which "provides a comprehensive list of non-profit organizations that assist prisoners and their families." Id. Apart from publications, HRDC also sends informational brochure packets about their publications, copies of relevant judicial opinions, and various letters about its publications and subscriptions. Id. ¶ 28.

According to the complaint, the public website of the Riverside County Sheriff's Office contains "Rules for Regular Incoming Mail," which provides: "Mail that contains any of the following will be rejected: . . . Staples . . ." Id. ¶ 32. HRDC alleges that between April 2024 and December 2025, thirty-three of the items it mailed to persons incarcerated at detention facilities operated by Defendants were rejected and returned—thirty from Blythe Jail and three from the Robert Presley Detention Center (RPDC).[2] Id. ¶ 33. The rejected items were returned with markings, including "CONTENTS NOT SUITABLE FOR CORRECTIONAL FACILITY," "NO STAPLES," "RETURN TO SENDER," "MAIL POLICY VIOLATION," or "RTS," with one returned book marked "RTS, No 3rd party books, Amazon or Barnes and Noble." Id. ¶ 35. Within that same time period, Defendants did not return 964 items that HRDC mailed to the people incarcerated in Defendants' detention facilities. Id. ¶ 37.

On June 16, 2025, HRDC mailed a state tort claim for damages to Defendant County of Riverside concerning the returned mail; the County rejected HRDC's claim by letter dated July 2, 2025. Id. ¶ 11.

---

[2] Other detention facilities in Riverside County include Cois M. Byrd Detention Center, John J. Benoit Detention Center, and Larry D. Smith Correctional Facility. Compl. ¶ 13.

HRDC subsequently filed the instant suit, alleging: (1) violations of its free speech rights under the U.S. and California Constitutions, (2) violations of its due process rights under the U.S. and California Constitutions, and (3) violations of the California Bane Act, Cal. Civil Code § 52.1. Id. ¶¶ 46-73. HRDC also filed a motion for a preliminary injunction to enjoin Defendants' mail policies and practices that prevented delivery of its publications and correspondence to incarcerated persons in Defendants' custody. Dkt. 11 at 1.

## II. Legal Standard

Rule 65 authorizes the Court to issue temporary restraining orders and preliminary injunctions. See Fed. R. Civ. P. 65(a) & (b). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008); accord Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc). A preliminary injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted) (emphasis in original). The moving party bears the burden of meeting all prongs of the Winter test. See DISH Network Corp. v. FCC, 653 F.3d 771, 776 (9th Cir. 2011). "The first factor—likelihood of success on the merits—'is the most important' factor," and if the movant fails to establish it, courts "need not consider the other factors." California by and through Becerra v. Azar, 950 F.3d 1067, 1083 (9th Cir. 2020) (quoting Garcia, 786 F.3d at 740).

Whether to grant or deny a preliminary injunction is a matter of the district court's equitable discretion. See Winter, 555 U.S. at 32.

## III. Discussion

As an initial matter, Defendants argue that the motion should be denied as to the individual defendants because "the Complaint makes no specific allegations—and the Motion presents no evidence—that any

individual defendant personally participated in, directed, or was even aware of the conduct that allegedly forms the basis of Plaintiff's claims." Opp'n at 1-2. HRDC does not address the actions of the individual defendants in its motion and does not respond to Defendants' argument in its reply. The Court therefore finds that HRDC has failed to satisfy its burden to show it is entitled to a preliminary injunction with respect to the individual defendants in their individual capacities. See Edmo v. Corizon, Inc., 935 F.3d 757, 799 (9th Cir. 2019) (finding the district court improperly included certain defendants in their individual capacities within the scope of the injunction when the record did not show they were involved in the challenged conduct).

For the reasons below, however, the Court finds that the Winter test favors imposing, in part, a preliminary injunction with respect to Defendant County of Riverside. See Melendres v. Arpaio, 784 F.3d 1254, 1260 (9th Cir. 2015) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citation omitted)).

**A. Likelihood of Success on the Merits**

**1. First Amendment Right to Free Speech**

Prison regulations that impinge on inmates' constitutional rights are valid if they are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). "The same analysis applies to regulations affecting *publishers*' rights to send materials to prisoners." Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir. 2001); see also Thornburgh v. Abbott, 490 U.S. 401, 404 (1989) (recognizing publishers' First Amendment interest in access to prisoners and applying Turner standard). The Ninth Circuit articulated Turner's "four-factor test" as follows:

> (1) [W]hether there is a valid, rational connection between the policy and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether the impact of

> accommodating the asserted constitutional right will have a significant negative impact on prison guards, other inmates and the allocation of prison resources generally; and (4) whether the policy is an "exaggerated response" to the jail's concerns.

Prison Legal News v. Ryan, 39 F.4th 1121, 1128-29 (9th Cir. 2022) (alteration in original) (quoting Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc)).

The "level of scrutiny to be applied to the decisions of prison administrators depends on the circumstances in each case[.]" Cook, 238 F.3d at 1150. If a plaintiff, whether a publisher or a prisoner, does "not present sufficient evidence to refute a common-sense connection between the [detention facility] regulation and its stated objectives," then the "only question is whether [detention facility] administrators reasonably could have thought the regulation would advance legitimate penological interests." Id. If the plaintiff "refute[s] the common-sense connection, however, the [detention facility] must demonstrate that the relationship is not so 'remote as to render the policy arbitrary or irrational.'" Id. (quoting Mauro, 188 F.3d at 1060).

a. Rule Against Staples

HRDC first challenges Defendants' rule against staples. Mot. at 13-14. HRDC points to the public website of the Riverside County Sheriff's Office, which includes a page for "Rules for Regular Incoming Mail." Dkt. 11-12 (Declaration of Paul Wright, Ex. K). According to that web page, "Mail that contains any of the following will be rejected: . . . Staples . . . ." Id. HRDC also provides its business records indicating numerous items of mail that have been rejected by Defendants for including staples. Dkt. 11-2 (Wright Decl., Ex. A); Dkt. 11-3 (Wright Decl., Ex. B).

Defendants maintain, however, that they do not have a rule that prohibits staples, and that, instead, their policies provide that "publications containing staples are to be processed by removing the staples prior to delivery—not by censoring or returning the

publication"; mail items returned solely because of the presence of staples were returned by mistake. Opp'n at 8; see also Dkt. 41 (Defs.' Suppl. Br.) at 1-2.

Defendants point to Corrections Division Policy No. 507.09, section 5.1.1, which states, in relevant part, "Mail violations such as staples, postcards, perfume/cologne etc. shall be removed from magazines/publications prior to being delivered to the incarcerated person." Dkt. 27 (Declaration of Sgt. Marco Velez), Ex. A at 6. In other words, mail items containing staples are not "rejected," as the "Rules for Regular Incoming Mail" web page represents, but instead have their staples removed before being delivered to inmates. When the Correctional Lieutenant assigned to the Blythe Jail discovered that mail was being returned solely due to the presence of staples, he "issued written guidance to supervisory staff at the Blythe Jail reiterating that publications containing staples were not to be returned on that basis alone and that staples should be removed prior to delivery." Dkt. 26-2 (Declaration of Lt. Michael Harter) ¶ 9. The Floor Sergeant at the Blythe Jail also submitted a declaration, explaining, "To the extent any mail may previously have been returned due to staples, such returns reflected isolated processing issues within a high-volume mail system . . . ." Velez Decl. ¶ 23.

At the preliminary injunction hearing on March 2, 2026, Defendants asserted that their "Rules for Regular Incoming Mail" web page, which stated that mail containing staples would be "rejected," and its Corrections Division Policy regarding the treatment of mail containing staples were "consistent" with each other. Dkt. 35 (Hr'g Tr.) 4:5-22. The Court expressed its doubts as to their consistency. Id. at 4-5. Following the hearing, Defendants submitted a supplemental brief, arguing for the first time that, even if they did reject mail containing staples, such a policy does not violate the First Amendment. Defs.' Suppl. Br. at 2-5. Defendants did not offer any additional evidence, but argued that the Court should follow Human Rights Defense Center v. Henderson County, No. 4:20-CV-00159-JHM, 2022 WL 14740236 (W.D. Ky. Oct. 25, 2022), in assessing the Turner factors as applied to the rule against staples. Id.

To summarize, Defendants represent on their "Rules for Regular Incoming Mail" web page that mail containing staples would be "rejected." Dkt. 11-12. But they separately have a policy that they do not return mail solely because of the presence of staples; instead, staples are removed before mail items are delivered to inmates. Dkt. 27, Ex. A at 6. HRDC's mail items that were returned solely because of the presence of staples were merely "isolated processing issues within a high-volume mail system." Velez Decl. ¶ 23. The record therefore shows two inconsistent rules or policies regarding staples in mail: the rule expressed on the Sheriff's Office's website and the policy outlined in the Corrections Division Policy.

Though Defendants contend otherwise, to "reject" mail containing staples cannot be interpreted to mean removing staples before delivery to inmates. See *Reject*, Merriam-Webster, https://www.merriam-webster.com/dictionary/reject (last visited April 9, 2026) (defining "reject" to mean "to refuse to accept, consider, submit to, take for some purpose, or use"). Notably, some of the mail items returned to HRDC were specifically marked with only "NO STAPLES," indicating that some of Defendants' staff applied a rule that rejected mail solely because of the presence of staples. Wright Decl., Ex. B.[3]

HRDC contests the rule against staples on the "Rules for Regular Incoming Mail" web page and not Defendants' Correctional Division Policy. Therefore, the Court applies the Turner test to the rule as stated on Defendants' website. The first Turner factor "consists of three sub-requirements. First, 'the governmental objective underlying the policy must be legitimate.' Second, the rule must be 'neutral.' And third, the rule must be 'rationally related to the government's objective.'" Ryan, 39 F.4th at 1131 (citation modified) (quoting Mauro, 188 F.3d at 1059).

[3] Defendants' own records indicate that "forty-one of Plaintiff's publications were returned during the relevant period, all solely due to a staples issue"—more than what HRDC's records show. Opp'n at 9 (citing Velez Decl. ¶ 18 & Ex. B).

HRDC does not dispute that the staples rule is "neutral" but disagrees that it is "rationally related to the government's objective." Mot. at 13-14. To meet its burden of providing sufficient evidence to "refute a common-sense connection between the Department regulation and its stated objectives," Cook, 238 F.3d at 1150, HRDC offers the sworn testimony of its correctional expert—a corrections professional with thirty-nine years of experience, including as the Deputy Director at the Federal Bureau of Prisons. Dkt. 11-13 (Declaration of Louis Christopher Eichenlaub). HRDC's expert provides uncontroverted testimony that, based on his experience, the "tiny gauge magazine staples" like those used in HRDC's publications "have never been identified as the source of significant security problems" and are "commonly accepted in jails and prisons all over the country." Id. ¶¶ 45-47.

Instead of proffering a governmental objective underlying the staples rule stated on their website, Defendants merely quote Henderson County for the proposition that the court in that case found a "valid and rational connection" between the staples policy at issue and the "legitimate, neutral governmental interests of jail safety and security." Defs.' Suppl. Br. at 4 (quoting Henderson Cnty., 2022 WL 14740236, at *7). But the staples policy in that case is different from the rule at issue here. In Henderson County, mail items were scanned to electronic tablets accessible to the inmates. 2022 WL 14740236, at *3. Publications bound with staples and too large to scan were "placed in the inmate's personal property and [were] accessible by the inmate when he requests to review them," and upon request inmates would be "taken to a private room . . . and allowed to view the documentation in their property." Id. Moreover, the correctional defendants proffered affidavits and incidents, indicating how inmates had actually misused staples. Id. at *7.

"Prison authorities cannot rely on general or conclusory assertions to support their policies. Rather, they must first identify the specific penological interests involved and then demonstrate both that those specific interests are the actual bases for their policies and that the policies are reasonably related to the furtherance of the identified

interests." Walker v. Sumner, 917 F.2d 382, 386 (9th Cir. 1990). Defendants have failed to do so. Indeed, they represent that they do not have a policy rejecting mail containing staples. The first Turner factor therefore weighs in favor of HRDC.

"The first factor of these [Turner] factors constitutes *sine qua non*." Prison Legal News v. Lehman, 397 F.3d 692, 699 (9th Cir. 2005) (quoting Walker, 917 F.2d at 385). "[I]f a regulation is not rationally related to a legitimate and neutral governmental objective, a court need not reach the remaining three factors." Id. Because Defendants have not articulated a penological interest specific to their staples rule, the Court finds HRDC has established a likelihood of success on the merits with respect to its First Amendment claim against Defendants' staples rule.[4]

b. Rule Prohibiting Books Not Sent from Amazon or Barnes & Noble

The record indicates that one of Defendants' facilities, the Blythe Jail, has returned only one of HRDC's publications with the marking, "RTS, No 3rd party books, Amazon or Barnes and Noble." Dkt. 11-1 (Declaration of Paul Wright) ¶ 47; Wright Decl., Ex. A at 22. Based on this marking, HRDC argues that "the Detention Facilities are also banning all books unless they are sent by Amazon or Barnes and Noble." Mot. at 8. HRDC seeks an injunction prohibiting Defendants from "reject[ing] incoming mail sent from [HRDC] to people incarcerated at any of the County's five Detention Facilities on the grounds that Plaintiff is not on Defendants' list of approved vendors[.]" Dkt. 40-1 (Pl.'s Proposed Order) at 4.

The facts on the record, however, do not bear out HRDC's theory. Defendants assert that HRDC's proffered single incident, which "took

---

[4] Because HRDC's First Amendment claim under the federal constitution justifies awarding the complete relief it seeks with respect to the staples rule, the Court does not address HRDC's claims under the California constitution and the Bane Act for the same violation.

place almost two years ago," "reflects an isolated issue within a high-volume jail mail system, not County policy." Defs.' Suppl. Br. at 6-7. Defendants' declarants support Defendants' assertion, stating that the "Blythe Jail does not ban *Prison Legal News*, *Criminal Legal News*, or any other publication distributed by [HRDC]." Velez Decl. ¶ 17; see also Dkt. 26-3 (Declaration of Sgt. Feng Vang) ¶ 14 (same with respect to RPDC). HRDC's expert also concedes that Defendants' "posted mail and publication policies do not expressly limit publications to those shipped by certain vendors." Eichenlaub Decl. ¶ 48. Nothing in the record indicates that any other publication sent by HRDC has been returned because it did not come from Amazon or Barnes & Noble. See Los Angeles County, Cal. v. Humphries, 562 U.S. 29, 30-31 (2010) (holding that plaintiffs seeking prospective relief from "a municipal entity under 42 U.S.C. § 1983 must show that their injury was caused by a municipal policy or custom"); Hum. Rts. Def. Ctr. v. County of Los Angeles, No. CV 17-4883-R, 2017 WL 6523442, at *1 (C.D. Cal. Sept. 25, 2017) (denying a motion for preliminary injunction where the plaintiff failed to show that the defendants "enacted any regulation causing rejection of [its publication] and associated written content").

The Court concludes that HRDC is not likely to succeed on the merits with respect to its First Amendment claim that HRDC publications are being rejected on the basis that HRDC is not an approved vendor. The record does not support HRDC's theory that there is such a policy prohibiting its publications.[5] Because it is not

[5] HRDC has made no argument as to whether analysis under the California constitution would result in a different outcome, and the Bane Act does not create an independent substantive right. See Williamson v. City of National City, 23 F.4th 1146, 1155 (9th Cir. 2022) ("California's Bane Act requires proof of an underlying constitutional violation."). In any event, with respect to HRDC's California claims involving the same conduct, "[a]n injunction cannot issue in a vacuum based on the proponents' fears about something that may happen in the future. It must be supported by actual evidence that there is a realistic prospect that the party enjoined intends to engage in the prohibited activity." Korean Phila. Presbyterian Church v. Cal. Presbytery,

likely to succeed on the merits, the Court "need not consider the other [Winter] factors" with respect to this claim. Becerra, 950 F.3d at 1083. HRDC's request to enjoin Defendants' rejection of HRDC mail on the grounds that it is not on Defendants' list of approved vendors is therefore denied.

### 2. Fourteenth Amendment Right to Due Process

The Ninth Circuit "has repeatedly acknowledged that withholding delivery of inmate mail must be accompanied by the minimum procedural safeguards established in [Procunier v. Martinez, 416 U.S. 396 (1974), overruled on other grounds by, Thornburgh, 490 U.S. at 403-04]." Krug v. Lutz, 329 F.3d 692, 697-98 (9th Cir. 2003); Hum. Rts. Def. Ctr., Inc. v. Uttecht, 161 F.4th 1141, 1160-61 (9th Cir. 2025) (applying Procunier to publisher's due process claim). "Three baseline protections must be afforded: (1) notice to the inmate of the rejection, (2) a reasonable opportunity to appeal the rejection, and (3) review by an independent official." Roberts v. Apker, 570 F. App'x 646, 648 (9th Cir. 2014). Additional requirements should not be "unduly burdensome." Procunier, 416 U.S. at 419.

HRDC argues that despite returning thirty-three items of HRDC's mail, Defendants did not provide HRDC with "meaningful notice or opportunity to challenge" those rejection decisions. Mot. at 19-20. HRDC asserts two ways in which notice was inadequate: (1) "the returned mailings did not provide meaningful notice why the mail was rejected by Defendants"; and (2) "none of the returned items contained any notice of a right to appeal the rejections, or any information on how HRDC could challenge the censorship." Id. at 20.

In response, Defendants again cite Corrections Division Policy No. 507.09, subsection 5.1.1, which provides that "when mail or a publication is denied, staff are required to complete a Notification of Denied Mail/Publication form identifying the reason for non-delivery,

77 Cal. App. 4th 1069, 1084 (2000). Apart from a single isolated incident, the record contains no such evidence.

which is provided to both the incarcerated person and the sender." Opp'n at 10-11 (citing Velez Decl. ¶ 15 & Ex. A; Vang Decl. ¶ 12). According to Defendants, the "notice expressly advises the incarcerated person and sender that the mail determination may be appealed to designated Corrections Division supervisory personnel within specified timeframes, thereby affording a meaningful opportunity to challenge the decision." Id. at 11. But Defendants do not claim that these notice and appeal policies were actually followed. HRDC represents that it has never received any such notice; Defendants do not disagree. Dkt 28 (Reply) at 7 (citing Dkt. 28-1 (Declaration of Derek Gronquist) ¶ 9).[6]

Defendants also argue that the notice HRDC actually received—the markings on the returned mail—was sufficient, and that the sender could "contact the detention facility to seek clarification regarding the reason for non-delivery or to raise a concern regarding the application of the mail policy." Opp'n at 11.

First, apart from "NO STAPLES," the other reasons provided by Defendants' detention facilities for the rejection of HRDC's mail are, at best, vague and ambiguous and, at worst, provide no reason at all. Many of the rejected mail items were returned to HRDC marked with text such as "CONTENTS NOT SUITABLE FOR CORRECTIONAL FACILITY," "MAIL POLICY VIOLATION," "RETURN TO SENDER," or "RTS." Wright Decl. ¶ 47. The first two examples do not indicate why the contents of the mail were not suitable or which mail policy was violated. The other two examples simply reiterate that the rejected mail was returned, without providing any basis for rejection. Without the specific reason for rejection, HRDC cannot vindicate its due process right to appeal the rejection of its mail. See Krug, 329 F.3d at 697

[6] Defendants object to the paragraph cited in the Gronquist Declaration "[t]o the extent this paragraph implies that Defendants failed to follow internal procedures or violated due process" as lacking foundation and constituting improper lay opinion. Dkt. 29 at 4-5. But the fact that HRDC has never received such notice is outside the scope of Defendants' objection and within the personal knowledge of the declarant, who is a paralegal at HRDC. Gronquist Decl. ¶¶ 1-2.

(holding that there is "a constitutional right to two-level review" regarding the rejection of incoming mail).

Second, though Defendants contend that HRDC should have "contact[ed] the detention facility to seek clarification regarding the reason for non-delivery," there is no indication that HRDC was informed of that means of appeal. Opp'n at 11.[7] "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978) (finding notice that failed to describe appeal procedures was inadequate). Here, Defendants do not contest that HRDC was not provided with notice of its appeal procedures, and they proffer no evidence that information regarding those appeal procedures was publicly available. Defendants cite no authority requiring HRDC to be clairvoyant regarding their appeal procedures, which Defendants represent must be acted on "within specified timeframes," Opp'n at 11.

HRDC is likely to succeed on the merits of its due process claims because Defendants' notice regarding both the rejection of HRDC's mail and the appeals process for rejected mail was inadequate or nonexistent. Because HRDC does not challenge Defendants' policies stated in Corrections Division Policy No. 507.09, subsection 5.1.1, regarding notice and appeal procedures for rejected mail[8]—and the

---

[7] Defendants also assert that HRDC "does not allege that it attempted to invoke the appeal process provided by policy and was denied review, ignored, or rebuffed." Opp'n at 12. But HRDC did attempt the administrative remedy of filing a tort claim with the County. Wright Decl. ¶ 57. Though Defendants argue that the "tort claims process is distinct from, and not a substitute for, the procedures governing inmate mail decisions," they do not deny that they did not provide notice regarding those specific inmate mail procedures in the first place. Opp'n at 12.

[8] At the March 2, 2026 hearing, HRDC noted that the text of the model "Notification of Denied Mail/Publication" form contained in the Corrections Division Policy filed by Defendants suggested that the person denying the mail may also be the same person who reviews the appeal of the denial, Hr'g

record does not show Defendants actually put those policies into practice—the Court does not reach those policies.[9]

**B. Irreparable Harm**

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." Hernandez v. Sessions, 872 F.3d 976, 994-995 (9th Cir. 2017) (internal quotation marks and citation omitted) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Consequently, where the challenged policies "are likely unconstitutional," a plaintiff will "have also carried [its] burden as to irreparable harm." Id. (finding irreparable harm based on the likelihood of success on the merits of the plaintiffs' Due Process claims); see also Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics, 29 F.4th 468, 482 (9th Cir. 2022) (holding that to establish irreparable harm, the plaintiff "need only demonstrate the existence of a colorable First Amendment claim" (citation omitted)).

Defendants argue that HRDC has not presented evidence of any ongoing or imminent harm. Opp'n at 15. Specifically, Defendants contend that incidents of mail rejected solely because of the presence of staples conflicted with the County's Corrections Division Policy, and that any such mail returns "reflected isolated processing issues within

---

Tr. 15:3-14 (citing Velez Decl., Ex. A at 8), which could violate HRDC's "constitutional right to two-level review." Krug, 329 F.3d at 697-98 (requiring the defendants "to implement a system that provides objecting prisoners with the right to appeal the decision to exclude incoming mail to a prison official other than the one who made the initial exclusion decision"). This issue, however, is not properly before the Court: it is neither in HRDC's motion nor in any subsequent briefing, and the facts have not been developed.

[9] Because HRDC's Fourteenth Amendment claim under the federal constitution justifies awarding the complete relief it seeks with respect to adequate notice and an appeals process, the Court does not address HRDC's claims under the California constitution and the Bane Act for the same violation.

a high-volume jail mail system—not an ongoing policy or practice of censorship." Id. at 15-16. Defendants represent that "[a]fter a grievance brought the issue to supervisory attention" in December 2024, a lieutenant at Blythe Jail "issued written guidance to supervisory staff reiterating that publications containing staples were not to be returned on that basis alone and were to be delivered after staple removal." Id. (citing Harter Decl. ¶¶ 8-11).

But Defendants do not address the "Rules for Regular Incoming Mail" web page that includes the rule prohibiting staples. Mot. at 7-8; Wright Decl. ¶ 61. Nothing in the record shows that the webpage has been modified to align with Corrections Division Policy No. 507.09. These "Rules for Regular Incoming Mail" therefore conflict with the Corrections Division Policy, and Defendants' evidence indicates that only staff at the Blythe Jail were told that the latter controls.

Defendants also fail to address the deficient notice given for the rejection of HRDC's non-stapled mail items, as well as the rejection of HRDC's mail items at detention facilities other than the Blythe Jail. As HRDC points out, even after the lieutenant issued written guidance in December 2024 at the Blythe Jail, as recently as December 2025, Byrd Detention Center and RPDC rejected five of HRDC's issues of *Criminal Legal News* without appearing to give a reason. Reply at 3; Dkt. 28-2 (Gronquist Decl., Ex. A).[10] In March and April 2025, RPDC

---

[10] Defendants object to Exhibit A to the Gronquist Declaration as untimely new evidence filed with HRDC's reply. First, Exhibit A is responsive to Defendants' representation that "no further returns have occurred since" November 4, 2024 at the Blythe Jail, and that "[a]t RPDC, none of Plaintiff's publications were returned at all during the relevant period," such that the "undisputed record forecloses any claim of imminent or continuing injury." Opp'n at 15-16; see Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 979 n.1 (9th Cir. 2006) (permitting evidence on reply used to counter claims made in opposition). Moreover, Exhibit A was submitted three weeks before the March 2, 2026 hearing, and Defendants had an opportunity to respond to the evidence at the hearing. Hr'g Tr. 3:14-20; see Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1189 (9th Cir. 2024) (finding the district court did not abuse its discretion in considering evidence where

also rejected two copies of *PYHS* for the vague reason of "Mail Policy Violation." Wright Decl., Ex. A at 23.

Finally, Defendants argue that the time between April 2024—when Defendants were first alleged to have rejected and returned HRDC's mail—and January 2026—when HRDC filed its motion for a preliminary injunction—constitutes delay that "defeats any claim of irreparable harm." Opp'n at 16. In support, Defendants cite an out-of-circuit district court case. Id. (citing Prison Legal News v. County of Cook, No. 16-cv-6862, 2016 U.S. Dist. LEXIS 160780 (N.D. Ill. Nov. 21, 2016)).[11] But in the Ninth Circuit delay "is but a single factor to consider in evaluating irreparable injury," and "courts are 'loath to withhold relief solely on that ground.'" Arc of Cal. v. Douglas, 757 F.3d 975, 990 (9th Cir. 2014) (quoting Lydo Enters., Inc. v. City of Las Vegas, 745 F.2d 1211, 1214 (9th Cir. 1984)). Here, Defendants' detention facilities have continued to reject and return mail without providing notice of the specific reasons for rejection and the procedures and timeframe for appeal, with the most recent instances occurring only a month before HRDC filed its motion. Reply at 3; Gronquist Decl., Ex. A; Wright Decl., Ex. A. And part of the delay is explained by HRDC's attempt to exhaust administrative remedies first by filing a tort claim with Riverside County. Reply at 11; Wright Decl. ¶ 57.

Because the Court finds that HRDC has established a likelihood of success on the merits with respect to both its First Amendment staples rule claim and its Due Process claim, the Court concludes that HRDC has sufficiently established irreparable injury. Hernandez, 872

---

"[a]ll of Plaintiffs' documents were submitted at least five days before the hearing, and nothing in the record suggests that Defendants were prevented from responding to the documents.").

[11] County of Cook is also distinguishable. There, the district court found that the plaintiff failed to satisfy its burden of showing a "reasonable likelihood of success on the merits" of its First Amendment claim. County of Cook, 2016 U.S. Dist. LEXIS 160780, at *29, 34; cf. Cal. Chamber of Com., 29 F.4th at 482 (a plaintiff "need only demonstrate the existence of a colorable First Amendment claim" to establish irreparable injury).

F.3d at 994-995. And based on the recency of violations, as well as the fact that there is no indication in the record that Defendants have removed the rule prohibiting staples from the Riverside County Sheriff's Office's website, the Court finds that the violations are not isolated and that there is a likelihood of future violations.

### C. Balance of Equities and Public Interest

The final two elements of the Winter test—balance of equities and public interest—"'merge' in lawsuits against the government." NetChoice, LLC v. Bonta, 152 F.4th 1002, 1024 (9th Cir. 2025) (quoting Poretti v. Dzurenda, 11 F.4th 1037, 1047 (9th Cir. 2021)). "Plaintiffs who are able to establish a likelihood that a policy violates the U.S. Constitution have also established that both the public interest and the balance of the equities favor a preliminary injunction." Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified); see also X Corp. v. Bonta, 116 F.4th 888, 904 (9th Cir. 2024) (explaining that "it is always in the public interest to prevent the violation of a party's constitutional rights," and that "when a party raises serious First Amendment questions, that alone compels a finding that the balance of hardships tips sharply in its favor" (citation modified)).

The "balance of equities" tips in favor of HRDC. Winter, 555 U.S. at 20. An injunction would not impose a burden on Defendants because they have conceded that they already have policies prohibiting the alleged violations. On the other hand, the challenged staples rule has resulted in returned mail that should not have been rejected, and the deficient notice on the returned mail has prevented HRDC from knowing about the correct appeal procedures for returned mail, as well as the specific reasons for rejection that would enable HRDC to appeal those mail returns.

The public interest factor also favors HRDC because the violations HRDC faces are the same as those that other publications seeking to send mail to inmates would face. See NetChoice, 152 F.4th at 1024 (noting that the factors of "balance of equities" and "public interest" merge in cases against the government).

Defendants quote Turner to argue that they are entitled to substantial deference with respect to the "public interest analysis" because "[c]ourts are 'ill equipped to deal with the increasingly urgent problems of prison administration' and must accord significant deference to the professional judgment of jail administrators in matters affecting institutional order, security, and operations." Opp'n at 17 (quoting Turner, 482 U.S. at 84-85). But the policies contained in the County's Corrections Division Policy No. 507.09, subsection 5.1.1—which Defendants themselves proffer—prohibit the violations HRDC seeks to enjoin, including mail rejected because of the presence of staples and the lack of adequate notice. Velez Decl. ¶¶ 15, 21-23. In other words, the constitutional violations alleged by HRDC also appear to be violations of "the professional judgment of jail administrators" set forth in the Corrections Division Policy. Opp'n at 17. As for Defendants' reliance on Turner, as discussed above, HRDC has demonstrated a likelihood of success on the merits of two of its claims under the Turner test, which already "accord[s] deference to the appropriate prison authorities." Turner, 482 U.S. at 85.

Defendants also argue that the public interest "weighs against preliminary injunctions that would alter, rather than preserve, the status quo," and that such "[m]andatory preliminary injunctions are disfavored . . . ." Opp'n at 17-18. It is unclear whether Defendants' reference to the "status quo" refers to the policies and procedures outlined in their Corrections Division Policy or to their failure to follow those policies and procedures concerning staples and proper notice. HRDC does not challenge the former. And if Defendants mean the latter, then their own evidence and argument indicate that such failures should not be happening in the first place. See Opp'n at 9 (characterizing "returns based solely on staples" as "isolated processing errors" under the Corrections Division Policy); id. at 10-11 (describing notice and appeal policies and procedures in the Corrections Division Policy). The Court finds that HRDC does not seek an injunction that would alter the status quo as stated in Defendants' Corrections Division Policy.

### D. Bond Waiver

HRDC argues that the bond requirement under Rule 65(c) of the Federal Rules of Civil Procedure should be waived, Mot. at 24-25, and Defendants do not request a bond.

Under Rule 65(c), "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." District courts have "discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1126 (9th Cir. 2005) (citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003).

Because Defendants effectively concede that the County's own Corrections Division Policy prohibits most of the violations HRDC alleges, the Court finds that "there is no realistic likelihood of harm" to Defendants from a preliminary injunction. Id. The bond requirement is waived.

## IV. Conclusion

For the forgoing reasons, HRDC's motion is DENIED in part, with respect to the Defendants in their individual capacities and the rule prohibiting books not sent from approved vendors such as Amazon and Barnes & Noble. HRDC's motion is GRANTED in part as follows:

(1) County of Riverside must not reject incoming mail sent from HRDC to persons incarcerated at any of its five Detention Facilities on the sole grounds that the mail contains staples,

(2) No later than May 4, 2026, County of Riverside must modify its published "Rules for Regular Incoming Mail" consistent with

its Corrections Division Policy concerning the treatment of mail containing staples as well as this Order, and

(3) County of Riverside must provide adequate written notice and an administrative appeal process to both the sender and the incarcerated intended recipient if the County denies the delivery of mail from HRDC.

IT IS SO ORDERED.

Date: April 20, 2026

Dale S. Fischer
United States District Judge